**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO PINA, | No. C 08-2684 SI (pr) |
| Plaintiff, | **ORDER OF DISMISSAL** |
| v. | |
| DOLORES A. CARR, District Attorney; et al., | |
| Defendants. / | |

**INTRODUCTION**

Pablo Pina, an inmate at Pelican Bay State Prison, filed a pro se civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A.

**BACKGROUND**

A.   Procedural History

Pina was convicted of first degree murder and burglary in 1986 following a jury trial in Santa Clara County Superior Court. He was sentenced to 38 years to life in prison, and remains in custody serving that sentence. The complaint in this action is his most recent effort at challenging that conviction. To analyze the complaint in this action, a brief exploration of Pina's litigation history is necessary.

In 1999, Pina filed a civil rights action challenging his conviction, Pina v. Dougherty, C 99-397 SI. It was dismissed as barred by the Heck rule.

United States District Court

For the Northern District of California

1    Pina's federal habeas petition challenging his 1986 conviction, Pina v. McGrath, C 04-

2 2251 SI (pr), was dismissed as untimely and judgment was entered on August 9, 2005.  This

3 court and the Ninth Circuit denied certificates of appealability, thereby ending that case in 2005.

4    In 2007, he filed a petition for writ of mandamus in this court, Pina v. California State

5 Supreme Court, Case No. C 07-5675 SI (the "2007 action").  He  alleged that there were taped

6 interviews and interrogations of witnesses that the district attorney had that were excluded from

7 the trial.  This evidence had been disclosed to the defense, but counsel long ago threw away his

8 files, according to Pina.  Apparently Pina believed those tapes had something that would be of

9 value in his efforts to overturn his conviction.  Since about 1991, he had made numerous

10 requests and had filed numerous cases in state court to try to obtain the evidence.  Most recently,

11 he had filed a petition for writ of habeas corpus "in the California Supreme Court asking that the

12 court order the superior court to provide the tapes that were kept from the jury so that he could

13 use this evidence to support his petition for a new trial.  The California Supreme Court denied

14 this request. . . . Petitioner now seeks relief by this court in the forum [sic] of writ of mandate."

15 Petition, p. 2, in 2007 action.

16    This court dismissed the 2007 action, explaining that it did not have mandamus authority

17 or appellate jurisdiction over the state's highest court.  Order of Dismissal, pp. 1-2 in 2007

18 action.  The court also thought the petition looked like another challenge to Pina's conviction,

19 and instructed Pina that he had to obtain permission from the Ninth Circuit to file a second or

20 successive petition under 28 U.S.C. § 2244(b)(3)(A). Order of Dismissal, pp. 2-3, in 2007 action.

21  The court also wrote the following, which gives context to the current action:

22    [A]lthough cloaked in a challenge to a state court judgment, what Pina is actually trying
     to do is to obtain evidence.  The Ninth Circuit has ruled a civil rights action under 42
23    U.S.C. § 1983 action is not an inappropriate vehicle to try to do that, at least in the
     context of obtaining DNA testing on evidence used at trial.  See Osborne v. District
24    Attorney's Office For The Third Judicial District, 423 F.3d 1050 (2005).  However,
     Osborne only tackled the threshold procedural question of what kind of action could be
25    brought and left undecided whether there exists a constitutional right of post-conviction
     access to DNA evidence.  See id. at 1056.  That is a rather large unanswered question,
26    because one of the elements of a § 1983 action is that state officials have violated a right
     protected under the Constitution, laws or treaties of the United States.  If Pina was to file
27    a § 1983 action, he would have to allege the violation of such a right.  The current action
     is not a § 1983 action and will not be construed to be one; the dismissal of this action
28

2

**United States District Court**
For the Northern District of California

1
2
3
4

will, however, be without prejudice to Pina filing a § 1983 action. In addition to identifying a constitutional right that has been violated, Pina has the additional likely problems of a statute of limitations bar, as well as issue or claim preclusion based on the fact that he has already litigated and lost in state court. The court does not decide any of these issues, but simply notes their existence so as not to mislead Pina to believe that he will prevail if he files a § 1983 complaint.

Order of Dismissal, p.3, in 2007 action.

5

6

7

B.      Allegations Of Complaint

8

A few months after the court dismissed the 2007 action, Pina filed the current civil rights

9

complaint under 42 U.S.C. § 1983. In it, he does not seek damages, but only declaratory relief

10

and an injunction compelling defendants to produce certain documents and evidence. The

11

named defendants are the current Santa Clara County District Attorney, former deputy district

12

attorneys, and the San Jose police chief.

13

The complaint alleges the following:

14

There are police reports and tapes of witness interviews that were provided to Pina and

15

his attorney before trial. These tapes had helpful information to him, as they showed police

16

coaching witnesses. He suggested to his attorney that the tapes be presented at the preliminary

17

hearing to resolve the matter but his attorney told him the judge wouldn't allow it. During trial,

18

the prosecutor (defendant Allegro-Dougherty) only presented one tape to the jury. That one tape

19

was presented in a redacted form pursuant to court order.

20

Defendant Nudleman was in the district attorney's office and occasionally filled in on

21

Pina's case. He sent threats to Pina through his attorney and repeatedly urged him to plead

22

guilty. Nudleman had something to do with Oswald, an informant, and a deal being offered to

23

Oswald, but the deal with Oswald was not disclosed to Pina or his attorney. Nudleman also

24

knew but did not disclose to the defense that the San Jose police arrested Larry Mejia and made

25

a deal with him in 1983 to let him go free if he set up Pina so police could arrest him. Defendant

26

Allegro-Dougherty also knew that the police sent informant Larry Mejia to set Pina up to be

27

arrested.

28

3

United States District Court
For the Northern District of California

1    The Santa Clara County District Attorney's office and the San Jose police department

2 have denied Pina's requests for copies of all police reports and the tapes.  Defendants Santa Clara

3 County District Attorney Dolores Carr and San Jose Police Chief Davis are liable as the

4 supervisors of these entities.

5    Pina's attorney has discarded his copy of the files and records.

6    Pina alleges that the failure to disclose to him that the police sent informant Larry Mejia

7 to set him up and the extremes to which the police were going to get him off the streets "violated

8 plaintiff's rights under the federal constitution's Due Process Clause that guarantees a fair trial."

9 Complaint, p. 10.  He asserts a Brady violation as to the non-disclosure of information about

10 informant Larry Mejia.  Pina also asserts several causes of action for prosecutorial misconduct

11 during the trial.  Pina asserts that the defendants' refusal to provide access to the materials that

12 were kept from the jury deprived him of his right to due process.  Complaint, p. 11.  And he

13 asserts an equal protection claim based on a 1986 confiscation of his legal materials in prison.

14    The prayer for relief requests that the court enter a judgment "declaring that the

15 defendants' acts and procedures and practices described violate the plaintiff's constitutional

16 rights" and ordering defendants or their agents "to turn over the copies of the tapes and police

17 investigation reports, and all information that pertains to informant Larry Mejia's deal with

18 police to set plaintiff up.  Also all informant deals made with Carol Oswald, or any other

19 witnesses who gave information related to plaintiff."  Complaint, p. 12.

20

21                                    **DISCUSSION**

22    A federal court must engage in a preliminary screening of any case in which a prisoner

23 seeks redress from a governmental entity or officer or employee of a governmental entity.  See

24 28 U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss

25 any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted,

26 or seek monetary relief from a defendant who is immune from such relief.  See id. at

27 1915A(b)(1),(2).  Pro se pleadings must be liberally construed.  See Balistreri v. Pacifica Police

28

4

1 Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

2          To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that

3 a right secured by the Constitution or laws of the United States was violated and (2) that the

4 violation was committed by a person acting under the color of state law.  See West v. Atkins,

5 487 U.S. 42, 48 (1988).

6          Pina's complaint will be dismissed because it does not state a claim upon which relief may

7 be granted.  Pina's complaint asks for (1) a declaration that defendants violated his constitutional

8 rights in (a) the conduct of the trial, and (b) not turning over the materials to him; (2) production

9 of materials that were not turned over to him before his trial two decades ago, and (3) production

10 of another copy of materials that were provided to him before his trial.

11

12    A.       Declaratory Relief Requests

13          The Heck rule usually precludes a prisoner-plaintiff from obtaining damages or equitable

14 relief in a § 1983 action for alleged constitutional violations in connection with his criminal trial.

15 Heck v. Humphrey, 512 U.S. 477 (1994), held that a plaintiff cannot bring a civil rights action

16 for damages for a wrongful conviction or imprisonment, or for other harm caused by actions

17 whose unlawfulness would render a conviction or sentence invalid, unless that conviction or

18 sentence already has been determined to be wrongful.  See id. at 486-87.  A conviction or

19 sentence may be determined to be wrongful by, for example, being reversed on appeal or being

20 set aside when a state or federal court issues a writ of habeas corpus.  See id.  The Heck rule also

21 prevents a person from bringing an action that -- even if it does not directly challenge the

22 conviction or other decision -- would imply that the conviction or other decision was invalid.

23 The practical importance of this rule is that a plaintiff cannot attack his conviction in a civil

24 rights action for damages; the decision must have been successfully attacked before the civil

25 rights action for damages is filed.  The Heck rule was first announced with respect to an action

26 for damages, but the Supreme Court has since applied the rule to an action that sought

27 declaratory relief as well as damages.  See Edwards v. Balisok, 520 U.S. 641, 648 (1997).  That

28

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1  Heck applies to both damages and equitable relief was further clarified in Wilkinson v. Dotson,

2  544 U.S. 74, 81-82 (2005).  Whether the Heck rule applies requires one to consider whether

3  success in the §1983 action would "necessarily demonstrate the invalidity of the confinement

4  or its duration."  Id. at 82.  If so, the § 1983 action is barred no matter the relief sought (i.e.,

5  damages or equitable relief) as long as the conviction has not been set aside.

6        Pina claims that the prosecutor engaged in misconduct in connection with his trial and

7  asks this court to declare that "defendants' acts and procedures and practices described violated

8  the plaintiff's constitutional rights,"  Complaint, p. 12.  Setting aside the allegedly undisclosed

9  documents (which are discussed in the next section), these claims are squarely within the Heck

10  rule.  A declaration that a prosecutor violated a criminal defendant's constitutional rights by

11  engaging in misconduct in the presentation of evidence at trial surely would imply that the

12  conviction was invalid.  Further evidence that this is the kind of claim as to which Heck applies

13  is that one of the grounds for relief in Pina's habeas petition filed in 2004 was that the prosecutor

14  knowingly used fabricated testimony, i.e., testimony shown to be false by the taped statements

15  and police reports.  The claims must be dismissed.[1]

16        Even if Heck did not apply, the claims therein would be time-barred, as they were known

17  to Pina at least nine years before the filing of this action.  Similarly, the statute of limitations bars

18  Pina's claim for the destruction of legal property in prison 22 years ago, even if he had named

19  the right defendants for that claim.  The current statute of limitations for § 1983 actions is the

20  two-year period in California Code of Civil Procedure § 335.1 (and was one year before 2003).

21  See Silva v. Crain, 169 F.3d 608, 610 (9th Cir. 1999); Elliott v. City of Union City, 25 F.3d 800,

22  802 (9th Cir. 1994).

23  /   /   /

24

25

26

27  [1]To the extent the claims pertain to the alleged coercion of witnesses, issue and claim preclusion rules prevent Pina from asserting such claims because he already presented them in a 1999 civil rights complaint that was adjudicated against him.  See Order of Dismissal in Pina

28  v. Dougherty, C 99-397 SI.  Claims barred by Heck in 1999 are still barred.

1  B.      <u>Brady Materials Declaratory Relief Request</u>

2          Pina claims that there are documents and materials (collectively "documents") relevant

3  to an informant (Mejia) used in his case and apparently relevant to a witness-informant (Oswald)

4  that were never disclosed to him.    His claim is in the nature of a <u>Brady</u> violation with respect

5  to the non-disclosure of these documents.

6          In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court held "the suppression by

7  the prosecution of evidence favorable to an accused upon request violates due process where the

8  evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith

9  of the prosecution." <u>Id.</u> at 87.  Since <u>Brady</u>, the Supreme Court has made clear that the duty to

10 disclose such evidence applies even when there has been no request by the accused, <u>see</u> <u>United</u>

11 <u>States v. Agurs</u>, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence

12 as well as exculpatory evidence, <u>see</u> <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985).  Under

13 <u>Brady</u>, evidence is material "if there is a reasonable probability that, had the evidence been

14 disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable

15 probability' is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 682.  In

16 the criminal context, a defendant establishes a <u>Brady</u> violation whenever he can show that

17 favorable evidence material to his case was not disclosed to the defense, without respect to

18 whether the prosecution intentionally withheld such evidence. <u>See</u> <u>Brady</u>, 373 U.S. at 87.  Upon

19 the showing of a <u>Brady</u> violation, the defendant is entitled to a new trial. <u>See</u> <u>Strickler v.</u>

20 <u>Greene</u>, 527 U.S. 263, 266 (1999); <u>Brady</u>, 373 U.S. at 87-88.

21         In the civil rights context, a plaintiff claiming a <u>Brady</u> violation must show he was

22 deprived of favorable evidence material to his case; additionally, in order to prevail on a § 1983

23 claim brought against investigating officers, a plaintiff must establish that the officers

24 deliberately withheld exculpatory evidence from the prosecutor. <u>See</u> <u>Tennison v. City and</u>

25 <u>County of San Francisco</u>, Nos. C 04-0574 CW & C 04-1463 CW, 2006 WL 733470, *27-29

26 (N.D. Cal. Mar. 22, 2006).

27         In <u>Ybarra v. Reno Thunderbird Mobile Home Village</u>, 723 F.2d 675 (9th Cir. 1984), the

28

United States District Court

For the Northern District of California

7

United States District Court

For the Northern District of California

1    Ninth Circuit considered a Brady claim in a § 1983 action.  In Ybarra, a state prisoner serving

2    a sentence of life imprisonment for first degree murder, brought an action for damages and

3    declaratory relief under § 1983, alleging that the prosecutor, the District Attorney and the

4    County, had destroyed or permitted the destruction of exculpatory evidence needed for his

5    defense to the murder charge.  Id. at 677.  The prisoner-plaintiff claimed the failure to preserve

6    exculpatory material evidence was a Brady violation.  Id. at 678.  Although declaratory relief

7    was an available remedy under § 1983, id. at 681, the Ninth Circuit nevertheless concluded the

8    plaintiff's exclusive remedy, for his claim that his right to a fair trial had been violated under

9    Brady, was by way of habeas corpus.  Specifically, the Ninth Circuit held:  "It is clear that the

10   basis of Ybarra's claim is a challenge to the constitutionality of his conviction; in order to prevail

11   on this claim, he must collaterally void his state court conviction.  Although he does not

12   specifically request release, the finding of such declaratory relief in his favor would show that

13   release was required."  Id. at 682 (citations omitted).  In support of its conclusion, the Ninth

14   Circuit cited to Preiser  v. Rodriguez, 411 U.S. 475, 500 (1973), in which the Supreme Court

15   held that habeas corpus is the sole remedy when the relief sought is a determination that the

16   prisoner is entitled to immediate release.  See id.

17          The rationale of Heck is consistent with the reasoning of Ybarra.  Heck does not call into

18   question the conclusion reached by the Ninth Circuit.  A number of federal courts from other

19   circuits have found the Heck doctrine applicable to Brady claims.  See, e.g., Amaker v. Weiner,

20   179 F.3d 48, 51 (2d Cir. 1999); Moore v. Novak, 146 F.3d 531, 536 (8th Cir. 1998); Hamilton

21   v. Lyons, 74 F.3d 99, 103 (5th Cir.1996); Gravely v. Speranza, 408 F. Supp. 2d 185, 189 (D.N.J.

22   2006).

23          Pina's request for a declaration that defendants committed a Brady violation is barred by

24   Heck.  Determining that there was a Brady violation at his trial would necessarily demonstrate

25   the invalidity of the conviction and confinement.

26   /  /  /

27

28

United States District Court
For the Northern District of California

1    C       Injunctive Relief Requests For Production Of Documents

2            Evaluation of the injunctive relief requests is a bit more difficult.  Essentially, Pina wants

3    the court to order the production of documents so that he can later present a Brady claim or

4    develop support for his prosecutorial misconduct claims.  There are few cases that provide

5    guidance on the question of a post-conviction § 1983 action for injunctive relief for Brady

6    materials.

7            Two decisions from the Ninth Circuit regarding DNA evidence also provide some

8    guidance in determining whether Pina's injunctive relief claims can go forward.

9            In Osborne v. District Attorney's Office, 423 F.3d 1050 (9th Cir. 2005) ("Osborne I"),

10   the Ninth Circuit held that a prisoner's § 1983 claim seeking post-conviction access to DNA

11   evidence for biological testing is not barred under Heck.  The prisoner-plaintiff serving a

12   sentence for state court convictions of kidnaping and sexual assault, filed a § 1983 action to

13   compel the state to release DNA evidence used to convict him.  Id. at 1051.  Without reaching

14   the question of whether there exists a constitutional right of post-conviction access to DNA

15   evidence, the Ninth Circuit found the plaintiff's claim was not barred under Heck because

16   success in the § 1983 action would not "necessarily demonstrate the invalidity of confinement

17   or its duration."  Id. at 1054 (internal quotation and citation omitted).  Specifically, the Ninth

18   Circuit found the invalidity of the plaintiff's conviction or confinement would not be

19   demonstrated by the requested relief because: (1) success on the plaintiff's claim "would yield

20   only *access* to the evidence – nothing more"; (2) the analysis of the DNA "[might] prove

21   exculpatory, inculpatory, or inconclusive; thus there is a significant chance that the results

22   [would] either confirm or have no effect on the validity of Osborne's confinement"; and (3)

23   "even if the results [were to] exonerate Osborne, a separate action – alleging a separate

24   constitutional violation altogether – would be required to overturn his conviction."  Id. at 1054-

25   55 (emphasis in original).

26           Later, in Osborne v. District Attorney's Office, 521 F.3d 1118 (9th Cir. 2008) ("Osborne

27   II"), petition for cert. filed, 77 U.S.L.W. 2009 (U.S. June 27, 2008) (No. 08-6), the Ninth Circuit

28

9

United States District Court

For the Northern District of California

1    found there exists a limited constitutional right to post-conviction access to DNA for biological

2    testing that was not available at the time of the prisoner's trial. Id. at 1122.  In so holding, the

3    Ninth Circuit reasoned as follows:

4         Osborne's right to due process of law prohibits the State from denying him
          reasonable access to biological evidence for the purpose of further DNA testing,
5         where that biological evidence was used to secure his conviction, the DNA testing
          is to be conducted using methods that were unavailable at the time of trial and are
6         far more precise than the methods that were then available, such methods are
          capable of conclusively determining whether Osborne is the source of the genetic
7         material, the testing can be conducted without cost or prejudice to the State, and
          the evidence is material to available forms of post-conviction relief.
8
          In so holding, however, we do not purport to set the standards by which all future
9         cases must be judged.  We are presented with a certain set of circumstances
          presenting a meritorious case for disclosure, and our analysis and holding are
10        addressed to those circumstances only.

11   Id. at 1141-42 (footnote omitted).  Additionally, the Ninth Circuit made clear that the plaintiff's

12   claim of entitlement to DNA evidence was distinct from any claim he might bring in habeas

13   corpus based on the results of the DNA analysis – a claim that would assert the separate

14   constitutional violation that he had been convicted of a crime of which he was actually innocent.

15   See id. at 1131.

16        Osborne I does not stand for the proposition that Heck is inapplicable to all § 1983 claims

17   seeking the remedy of production of evidence.  As discussed above, Osborne I determined that

18   the plaintiff's § 1983 claim therein was viable not only because the plaintiff had merely

19   requested access to DNA evidence and not release from confinement, but also because the

20   plaintiff's claim that he was constitutionally entitled to such evidence was altogether separate

21   from any claim the plaintiff might assert in a habeas corpus action challenging the validity of his

22   conviction.  A determination in the § 1983 action that the plaintiff's constitutional right of access

23   to post-conviction DNA evidence had been violated would not necessarily imply the invalidity

24   of the plaintiff's conviction.  Moreover, the plaintiff's success in such action would not

25   necessarily imply the invalidity of his conviction, because the DNA analysis might be harmful

26   rather than helpful to the prisoner-plaintiff.

27        Here, by contrast, a determination that Pina is entitled to injunctive relief because his

28

10

United States District Court
For the Northern District of California

1   constitutional right to <u>Brady</u> evidence was violated would necessarily demonstrate the invalidity

2   of Pina's conviction.  Specifically, a finding herein that <u>favorable</u> evidence <u>material</u> to Pina's

3   case was not disclosed to the defense is the same finding that, in the criminal context, would

4   require a determination that he is entitled to a new trial.  <u>See</u> <u>Ybarra</u>, 723 F.3d at 682.

5   Consequently, even though Pina is not in his injunctive relief request seeking release, a

6   determination that he is entitled to the requested materials would necessarily demonstrate the

7   invalidity of his confinement.  The favorable material evidence to which Pina seeks access

8   would, as alleged in his complaint, necessarily prove that plaintiff's rights under <u>Brady</u> had been

9   violated.  Lastly, the court finds, based on the allegations in the complaint, that Pina has no

10  constitutional right to production of the evidence he seeks other than the right established in

11  <u>Brady</u>.  <u>See</u> <u>Thames v. Los Angeles Police Dept.</u>, No. CV 08-1044 RGK (MLG), 2008 WL

12  2641361, *4 (C.D. Cal. June. 30, 2008) (finding plaintiff had no due process right to access

13  police investigative records absent showing records favorable and material under <u>Brady</u>).  Pina

14  cannot avoid the <u>Heck</u> bar by asserting an independent right to production of evidence where

15  such claim does not necessitate a determination that his <u>Brady</u> rights were violated.

16      At first blush <u>Osborne II</u> might, with extremely liberal interpretation, be thought of as

17  creating a right to access evidence for the prisoner to show a <u>Brady</u> violation or to figure out

18  whether there was a constitutional violation such as a <u>Brady</u> violation.  However, <u>Osborne II</u>

19  counseled against a broad reading by explicitly limiting its holding to the "unique and specific

20  facts of this case." 521 F.3d at 1122.  Two unique and specific facts existed in <u>Osborne II</u> that

21  are absent here.  First, the evidence sought in <u>Osborne II</u> was in connection with an effort to

22  prove actual innocence. The evidence Pina seeks would not establish actual innocence. Second,

23  DNA evidence is different from most other evidence, and has received special attention from the

24  courts as the technology for evaluating it evolves.  Notwithstanding the interest in finality of

25  judgments, courts remain open to the unique situation presented when a new technology can

26  prove a convicted person's innocence.  In <u>Osborne II</u>, new and more sophisticated testing could

27  be done of the requested DNA evidence than was done at the time of trial a decade earlier.  No

28

11

United States District Court

For the Northern District of California

1   similar technological advancements have happened with respect to the evaluation of

2   documentary evidence about informants.  Like most documents, the documents sought by Pina

3   would be looked at and evaluated the same way they were 22 years ago at the time of his trial.

4   If the Ninth Circuit wanted to exempt all Brady claims and claims that might lead to Brady

5   claims from the Heck rule, it would have said so rather than explicitly limiting its holding to the

6   unique and specific facts in Osborne II.  This court will not read Osborne II to extend the right

7   therein any broader than the DNA evidence context in which it was decided.  The injunctive

8   relief requests are barred under Heck.

9          As to those materials that already were produced to Pina and his attorney, there was no

10  Brady violation.  The defense received that to which they were entitled – production of those

11  documents.  There is no constitutional obligation to replace the documents that were produced.

12

13                                           **CONCLUSION**

14         For the foregoing reasons, the complaint is dismissed.  Leave to amend will not be

15  granted because it would be futile.  In light of the dismissal of this action, the motion for

16  appointment of counsel is DENIED.  (Docket # 4.)  The clerk shall close the file.

17         IT IS SO ORDERED.

18  Dated: September 29, 2008

19                                                              SUSAN ILLSTON
                                                          United States District Judge

20

21

22

23

24

25

26

27

28

                                                 12